UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| J'ADORE LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>JONATHAN MORGAN ("J.B. Morgan"),<br>JB MORGAN, INC.<br><br>        Defendant. | CIVIL ACTION NO. _____<br><br><br>DEMAND FOR JURY TRIAL |

# COMPLAINT AND JURY DEMAND

## THE PARTIES

1. Plaintiff J'ADORE, LLC (hereinafter, "J'ADORE" or "Plaintiff") is a Massachusetts Limited Liability Company with a principal place of business in Middlesex County, Massachusetts.

2. Defendant JONATHAN MORGAN, a.k.a. J.B. Morgan (hereinafter, "JB") is an individual residing in the State of New Jersey.

3. Defendant JB MORGAN, INC. (hereinafter, "MORGAN") (with JB, "Defendants") is a New Jersey corporation with a principal place of business in Bergen County, New Jersey.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000, exclusive of interest, attorneys' fees and costs, and there is diversity of citizenship between the Plaintiff and the Defendants.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that this Complaint raises federal questions under 15 U.S.C. § 1051. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

1

6. This Court has personal jurisdiction over Defendants pursuant to MASS. GEN. LAWS Ch. 223A § 3(a) as Defendants transacted business and sold luxury goods to Plaintiff who reside in the Commonwealth of Massachusetts. The exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice. (*See Ealing Corp. v. Harrods Ltd.* (1st Cir. 1986) 790 F.2d 978, 982-83 (a defendant transacting any business in the Commonwealth subjects itself to jurisdiction in the Commonwealth if the cause of action arises from such transaction of business); *Nowak v. Tak How Investments, Ltd.* (1st Cir. 1996) 94 F.3d 708, 712 (same); *Access Now. Inc. v. Otter Products, LLC* (D. Mass. 2017) 280 F. Supp. 3d 287, 292 (a defendant may transact business in the Commonwealth through a website).) Here, among other things, Defendants sold hundreds of counterfeit luxury goods to Plaintiff and directly conferred with Plaintiff regarding each transaction. Plaintiff would send its orders to Defendants, who would confirm the items available in inventory, confer with Plaintiff on the final order, then provide Plaintiff with an invoice. Plaintiff and Defendants communicated via email, text message, and phone call. After confirmation of the amount, Plaintiff would send payment to Defendants who would then fulfill the orders by shipping the product to the Commonwealth of Massachusetts where Plaintiff J'ADORE is located. Plaintiff's claim herein arises from Defendants' conduct and transacting business with Plaintiffs in the Commonwealth.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(3) and (c) as Defendants are subject to personal jurisdiction in this judicial district. (*See Back Bay Farm, LLC v. Collucio* (D. Mass. 2002) 230 F. Supp. 2d 176, 188-89 & n. 11.)

## STATEMENT OF FACTS

8. Founded in or around 2009, J'ADORE is engaged in the luxury goods resale business. J'ADORE operates a brick and mortar storefront in Wakefield, Massachusetts and conducts online sales via their website, https://www.jadore-wakefield.com/. J'ADORE also advertises its luxury goods inventory on social media platforms such as Instagram and TikTok.

9. Defendants, who are located in the State of New Jersey, purport to sell luxury goods including, but not limited to, handbags, jewelry, and pins from luxury brands such as, *inter alia,* Yves Saint Laurent, Gucci, Prada, and Chanel. Defendants advertise their products available for purchase on MORGAN's Facebook and Instagram (@jbmorganinc) social media accounts.

10. In or around late 2021 and early January 2022, MORGAN contacted Plaintiff J'ADORE after seeing Plaintiff's social media posts on Instagram and TikTok. After reviewing Defendants' advertisements posted on MORGAN's Facebook page, J'ADORE decided to go into business with MORGAN as a supplier for Plaintiff's website and storefront.

11. From approximately January 2022 to October 2022, Plaintiff J'ADORE purchased hundreds of luxury handbags, jewelry, pins, etc. from Defendants, including products from luxury brand names including, but not limited to, Yves Saint Laurent, Gucci, Prada, and Chanel.

12. J'ADORE found products available for purchase on MORGAN's Facebook and Instagram (@jbmorganinc) pages, and then contacted JB to place specific orders. JB provided J'ADORE with authentication certificates for all products purchased, thus representing to J'ADORE that the products were authentic and not counterfeit.  Given J'ADORE's business in the luxury goods resale market, it is critical that products sold through J'ADORE's website and storefront are authentic, luxury products. J'ADORE reasonably relied on Defendants' representations that the products purchased were authentic, not counterfeit, and on the authentication certificates Defendants provided to confirm same.  Additionally, the authentication certificates induced Plaintiff to continue purchasing products Defendants posted for sale on their social media pages.

13. In or around 2022, after J'ADORE placed several orders and transactions with Defendants, and sold said products through its website and storefront, J'ADORE began receiving complaints from customers who had their purchases inspected by professional luxury goods authenticators, who confirmed that the products J'ADORE had purchased from Defendants were ***not***

*authentic and were, in fact, counterfeits*. However, Defendants insisted that the goods were authentic and legitimate. As such, J'ADORE enlisted the help of a colleague and professional authenticator and sent him five handbags it had purchased from Defendants to review and authenticate them in person. After an extensive review, the authenticator informed Plaintiff that the handbags sent were **"really good counterfeits."**

14. Plaintiff immediately contacted JB and informed him of the authenticator's findings that the handbags Plaintiff had purchased from Defendants were counterfeits. JB was defiant and insisted that the handbags were 100% authentic and legitimate. Around this time, J'ADORE sent another luxury bag purchased from Defendants to a second professional authenticator, which was *also* deemed to be fake.

15. During this time, Plaintiff reviewed its previous orders with Defendants and the products purchased. Following this review, Plaintiff is informed, believes, and based thereon alleges that Defendants either provided Plaintiff with fake authentication certificates or initially provided Plaintiff with genuine products to induce J'ADORE to continue purchasing products from Defendants.

16. Additionally, around this time, Plaintiff's customers began returning products purchased through J'ADORE's website and storefront (which Plaintiff had ordered from Defendants) and requesting refunds.

17. After discovering that Defendants had sold Plaintiff counterfeits, J'ADORE demanded a refund from Defendants for approximately thirty (30) handbags that had been returned. In or around October 2022, Defendants complied and provided Plaintiff with a cashier's check for $36,225.

18. However, J'ADORE has continued to receive returns and refund requests from customers whose products had been purchased from Defendants and later deemed to be counterfeits. Since approximately October 2022, Plaintiff J'ADORE has made several demands to Defendants for refunds for said products, but Defendants have ignored Plaintiff's demands.

19. From approximately October 2022 to the present, Plaintiff J'ADORE has received numerous requests for refunds from customers whose products were sourced from Defendants. On information and belief, Plaintiff J'ADORE anticipates that it will continue to receive additional refund requests in connection with products Plaintiff purchased from Defendants in the future.

20. Plaintiff, in good faith, relied upon Defendants' representations that the luxury goods advertised on MORGAN's Instagram page and purchased by J'ADORE were authentic and certified. **They were not.**

21. As set forth herein, Defendants, and each of them, engaged in unfair or deceptive acts or practices in advertising the aforementioned counterfeit goods on MORGAN's Instagram page and selling them to Plaintiff. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful under Massachusetts Law. M.G.L. c. 93A, §2. In addition, M.G.L c. 266 §147(d) discusses how possession of more than 25 counterfeit items shall be presumed to be in possession of said counterfeit items with the intent to sell or distribute. **This is precisely what Defendants did in their dealings with Plaintiff J'ADORE.** Defendants' unfair and deceptive business practices include, but are not limited to, deliberate breach of the covenant of good faith and fair dealing, false promises, fraudulent misrepresentation, and trademark infringement under the Lanham Act (15 U.S.C. § 1051, *et seq.*).

22. As set forth herein, Defendants' conduct significantly threatens and harms fair competition because Plaintiff has suffered, and will continue to suffer, from losses to its business operations, business relationships, business reputation, and lost profits. To date, Plaintiff J'ADORE has spent, and will continue to spend, significant time repairing its relationships with customers who were misled or wronged by Defendants' counterfeit products and rebuilding its reputation in the luxury resale industry. Presently, Defendants continue to hold a significant amount of money in connection with the counterfeit products sold to J'ADORE, and Defendants have refused to account

for and refund J'ADORE for the counterfeited products. As such, Plaintiff is unable to recoup the money lost due to Defendants' unfair and deceptive business practices.

## STATEMENT OF CLAIMS

### COUNT 1

### UNFAIR AND DECEPTIVE TRADE PRACTICES [M.G.L. c. 93A §2]

23. Plaintiff repeats and re-alleges the paragraphs above and incorporates them by reference as though fully set forth herein.

24. Plaintiff is entitled to bring a claim under Chapter 93A, Section 11.

25. At all relevant times herein, Defendants were engaged in trade or commerce under Chapter 93A.

26. Defendants' conduct as described herein constitutes one or more unfair or deceptive acts in violation of Chapter 93A, Section 2.

27. Upon information and belief, Defendants' conduct was knowing and intentional.

28. Plaintiff J'ADORE has been injured under Chapter 93A, Section 11 by Defendants' conduct in an amount to be proven at trial but believed to be in excess of $150,000.

### COUNT TWO

### FRAUD & DECEIT – INTENTIONAL MISREPRESENTATION

29. Plaintiff repeats and re-alleges the paragraphs above and incorporates them by reference as though fully set forth herein.

30. From approximately January 2022 to approximately October 2022, Defendants made multiple representations to Plaintiff J'ADORE, both orally and in writing, that the products advertised on MORGAN's Facebook and Instagram pages were authentic, luxury products including, but not limited to, handbags, jewelry, pins, etc. from brands such as, *inter alia,* Yves Saint Laurent, Prada, Gucci, and Chanel.

31. At or around the same time, Defendants made further representations to Plaintiff J'ADORE that the products Plaintiff purchased from Defendants were authentic, luxury products including, but not limited to, handbags, jewelry, pins, etc. from brands such as, *inter alia,* Yves Saint Laurent, Prada, Gucci, and Chanel through authentication certificates for said products that were provided to J'ADORE.

32. Defendants' representations to Plaintiff that the products advertised on MORGAN's Facebook and Instagram pages, and later purchased by J'ADORE, were authentic, luxury products were material to Plaintiff and its decision to engage, and continue to engage, in multiple business transactions with Defendants.

33. At the time said representations were made, Defendants, and each of them, knew their representations concerning the products advertised on MORGAN's Facebook and Instagram pages, and those purchased by J'ADORE, were false and/or recklessly disregarded the falsity of said representations. Likewise, at the time said representations were made, Defendants, and each of them, knew that the authentication certificates provided to Plaintiff were false.

34. On information and belief, Defendants, and each of them, intended for Plaintiff J'ADORE to rely on their representations that the products advertised on MORGAN's Facebook and Instagram pages, and later purchased by J'ADORE, were authentic.

35. Plaintiff reasonably relied on Defendants' representations and continued to do business with Defendants from approximately January 2022 to approximately October 2022, when Defendants' fraudulent scheme was discovered.

36. As a result of Defendants' fraudulent representations as set forth herein, J'ADORE has suffered significant damage to its business and reputation in an amount to be proved at trial but estimated to be in excess of $150,000.

**COUNT THREE**

**FRAUD & DECEIT – CONCEALMENT**

37. Plaintiff repeats and re-alleges the paragraphs above and incorporates them by reference as though fully set forth herein.

38. From approximately January 2022 to approximately October 2022, Plaintiff J'ADORE purchased luxury goods from Defendants that were advertised on MORGAN's Facebook and Instagram pages. In connection with each transaction, Defendants provided J'ADORE with authentication certificates purporting to verify that the luxury handbags, jewelry, pins, etc. that J'ADORE purchased from Defendants were genuine and authentic.

39. However, Defendants, and each of them, knew that the products advertised on MORGAN's Facebook and Instagram pages, and purchased by J'ADORE were counterfeits and that the authentication certificates were a sham. Defendants, and each of them, knowingly concealed from Plaintiff J'ADORE that the products advertised on MORGAN's Facebook and Instagram pages, and those purchased by J'ADORE were not genuine and authentic, but were, in fact, counterfeits. Defendants, and each of them, intentionally failed to inform Plaintiffs of the true nature of the products advertised on MORGAN's social media pages and sold hundreds of items to Plaintiffs knowing that said items were not genuine and authentic, but were, in fact, counterfeits.

40. Defendants' active concealment of the true nature of the products advertised on MORGAN's social media pages was material to Plaintiff and its decision to engage, and continue to engage, in multiple business transactions with Defendants. At all times mentioned herein, Defendants, and each of them, knew that the authenticity of the products advertised on MORGAN's Facebook and Instagram pages was material to Plaintiff and its decision to continue doing business with Defendants.

41. At the time of Defendants' concealment, Defendants, and each of them, had a duty to disclose to Plaintiff J'ADORE that the products advertised on MORGAN's Facebook and Instagram pages were not authentic luxury products such as handbags, jewelry, pins, etc., and were, in fact, counterfeits. Defendants, and each of them, intentionally breached their duties to Plaintiff J'ADORE and continued to conceal from Plaintiff that the products sold were counterfeits and/or recklessly disregarded the materiality of Defendants' concealment.

42. On information and belief, at all times mentioned herein, Defendants, and each of them, concealed the true nature of the products advertised on MORGAN's Facebook and Instagram pages, intending for Plaintiff J'ADORE to continue to purchase products from Defendants.

43. In the exercise of reasonable diligence, Plaintiff could not have discovered Defendants' concealment.  Plaintiff was entirely unaware of Defendants' concealment and did not discover that the products sold by Defendants were counterfeits until it received complaints from customers who had purchased said products.

44. At all times mentioned herein, Plaintiff reasonably relied upon the truth of Defendants' representations that the products Plaintiff purchased were authentic and genuine.  Relying on Defendants' representations that the products advertised on MORGAN's Facebook and Instagram pages were genuine and authentic, Plaintiff resold products purchased from Defendants on its online website and physical storefront.

45. As a direct and proximate result Defendants' fraudulent concealment as set forth herein, J'ADORE has suffered significant damage to its business and reputation in an amount to be proved at trial but estimated to be in excess of $150,000.

## COUNT FOUR

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

46. Plaintiff repeats and re-alleges the paragraphs above and incorporates them by reference as though fully set forth herein.

47. Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will destroy or injury the right of the other party to receive the benefits of the contract i.e. that each party will do everything the contract presupposes that party will do to accomplish its purpose.

48. From approximately January 2022 to October 2022, Plaintiff J'ADORE entered into several transactions with Defendants for the purchase of luxury products advertised on MORGAN's Facebook and Instagram pages. Each transaction between J'ADORE, on the one hand, and Defendants, on the other, constituted a separate agreement whereby MORGAN, on the one hand, agreed and promised that the products purchased by J'ADORE were genuine and authentic pursuant to the authentication certificates provided. J'ADORE, on the other hand, agreed and promised Defendants to pay for the products purchased.

49. As set forth herein, Defendants, and each of them, breached the implied covenant of good faith and fair dealing and failed to abide by their promises set forth in each transaction/agreement in bad faith.

50. As a direct and proximate result of Defendants' material breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proved at trial, in excess of $150,000.

## COUNT FIVE

## TRADEMARK INFRINGEMENT [15 U.S.C. § 1125(a)]

51. Plaintiff repeats and re-alleges the paragraphs above and incorporates them by reference as though fully set forth herein.

52. The Lanham Act, 15 U.S.C. § 1051, defines a trademark as a mark used in commerce or registered with a bona fide intent to use it in commerce. Trademark infringement occurs when any person who, or in connection with any goods or services, or any container for goods uses in any commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or association of such person with another person or as to the origin of their goods, services or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. §1125(a).

53. As set forth herein, Defendants' fraudulent misrepresentations and concealment of the true nature of the products advertised on MORGAN's Facebook and Instagram pages, and purchased by Plaintiff J'ADORE, constitutes trademark infringement within the meaning of 15 U.S.C. § 1125(a).

54. As set forth herein, as a direct and proximate result of Defendants' trademark infringement, Plaintiff J'ADORE has suffered damages to its business operations, business relationships, business reputation, and lost profits.

55. Under the Lanham Act, Defendants' intentional use of a counterfeit mark selling the aforementioned counterfeit goods to Plaintiff, entitles Plaintiff J'ADORE to recover actual damages, reasonable attorney fees, and Defendants' ill-received profits. These damages may be provided for every counterfeit good sold, which, in this case, would be in the hundreds.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff J'ADORE and against Defendants JB and MORGAN, in an amount to be established at trial, doubled or trebled under Chapter 93A, plus pre-judgment interest, and award Plaintiff J'ADORE its attorneys' fees and costs.

## JURY DEMAND

Plaintiff J'ADORE, LLC hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

J'ADORE, LLC,

By its attorneys,

___/s/ Matthew A. Porter___
Matthew A. Porter (BBO # 630625)
**PORTER LAW GROUP, P.C.**
99 Derby Street, Suite 200
Hingham, MA  02043
(617) 470-1558
matt@porterlawpc.com

and

Omar A. Siddiqui (CA SBN 213581)
*(MA PRO HAC VICE PENDING)*
**SIDDIQUI LAW, APC**
Park Tower
695 Town Center Drive, Suite 230
Costa Mesa, California 92626
(714) 384-6650 (tel)
(714) 384-6651 (fax)
osiddiqui@sidlawpc.com

Dated: April 19, 2024