UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| J'ADORE LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-11038-ADB |
| | * | |
| JONATHAN MORGAN; JB MORGAN, INC., | * | |
| | * | |
| Defendants. | * | |
| | * | |

# **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff J'Adore LLC ("J'Adore"), a reseller of luxury goods based in Wakefield, Massachusetts, brings this action against Defendants Jonathan Morgan and JB Morgan, Inc. (together "Defendants"), J'Adore's New Jersey-based suppliers. J'Adore says that the products it bought from Defendants were fake, and it asserts claims under the federal Lanham Act and Massachusetts statutory and common law. Now before the Court is Defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim, [ECF No. 28], which, for the reasons articulated herein, is **GRANTED**.

## I.   BACKGROUND

### A.   Factual Background

The following facts are drawn from the Amended Complaint, [ECF No. 25 ("Am. Compl.")]. For purposes of this motion, the Court must accept all well-pleaded facts as true. Lawrence Gen. Hosp. v. Cont'l Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024).

J'Adore, a Massachusetts limited liability company with its principal place of business in Massachusetts, operates a "luxury goods resale business" with a storefront in Wakefield, Massachusetts. [Am. Compl. ¶¶ 1, 8]. Jonathan Morgan is a New Jersey resident, and JB Morgan, Inc. is a New Jersey corporation with its principal place of business in New Jersey. [Id. ¶¶ 2–3]. Defendants purport to sell luxury goods, "including . . . handbags, jewelry, and pins from Luxury brands such as . . . Yves Saint Laurent, Gucci, Prada, and Chanel." [Id. ¶ 9]. In late 2021 or early January 2022, Morgan contacted J'Adore and the parties went into business with one another. [Id. ¶ 10]. "From approximately January 2022 to October 2022," J'Adore bought "hundreds of luxury handbags, jewelry, pins, etc." from Defendants who provided J'Adore with authentication certificates for all of the products purchased. [Id. ¶¶ 11–12].

J'Adore soon began receiving complaints from its customers, who had determined that the products they bought from J'Adore—and that J'Adore had bought from Defendants—were fakes. [Am. Compl. ¶ 13]. J'Adore did its own due diligence, [id. ¶¶ 13–15], and similarly concluded that Defendants had "either provided [J'Adore] with fake authentication certificates or initially provided [J'Adore] with genuine products to induce [J'Adore] to continue purchasing products from Defendants," [id. ¶ 15]. Customers began returning products and requesting refunds. [Id. ¶ 16]. J'Adore, in turn, demanded refunds from Defendants "for approximately thirty . . . handbags that had been returned," and was refunded $36,225 "[i]n or around October

2022." [Id. ¶ 17]. Since then, J'Adore has received "numerous" additional requests for refunds from customers who bought Defendants' products from J'Adore and "anticipates" that it will continue to receive additional requests. [Id. ¶¶ 18–19]. J'Adore has made "several demands" for refunds from Defendants, but these demands have been ignored. [Id. ¶ 18].

Defendants' conduct has caused J'Adore to suffer "losses to its business operations, business relationships, business reputation, and lost profits," [Am. Compl. ¶ 22], and required it to spend "significant time" repairing its relationship with customers and rebuilding its reputation, [id.]. Defendants continue to hold "a significant amount of money" in connection with fake products sold to J'Adore. [Id.]. All told, J'Adore claims it has suffered damages "believed to be in excess of $150,000," in addition to "reputational harm . . . [that] has resulted in lost business opportunities and diminished goodwill with existing and prospective customers." [Id. ¶ 30]; see also [id. ¶¶ 39, 48, 57, 64–66].

### B.  Procedural History

J'Adore filed its initial complaint on April 19, 2024. [ECF No. 1]. On June 20, 2024, Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim, [ECF No. 19], arguing, as relevant here, that J'Adore did not adequately allege that the amount in controversy exceeded $75,000, as required by 28 U.S.C. § 1332, [ECF No. 20 at 7–9]. J'Adore moved to amend its complaint and opposed the motion. [ECF Nos. 21, 22]. In its opposition, J'Adore argued that its complaint "allege[d] sufficient facts to establish . . . [an] amount in controversy . . . in excess of the requisite jurisdictional amount," but it offered "to further detail the basis for its claimed damages and the amount in controversy." [ECF No. 22 at 17–18]. Defendants opposed J'Adore's motion to amend. [ECF No. 23]. On November 5, 2024, this Court noted that J'Adore was entitled to amend its complaint once as a matter of

3

course under Federal Rule of Civil Procedure 15(a)(1)(B) and allowed J'Adore to file an amended complaint. [ECF No. 24]. J'Adore filed its Amended Complaint on November 19, 2024, asserting five claims under Massachusetts statutory and common law, as well as a claim for trademark infringement under the federal Lanham Act. [Am. Compl.]. Defendants again moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim, [ECF Nos. 28, 29], J'Adore opposed the motion, [ECF No. 32], and Defendants replied, [ECF No. 35].

## II.     LEGAL STANDARD

Defendants move to dismiss the Amended Complaint on two separate grounds: (1) lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); and, (2) failure to state a claim under Rule 12(b)(6). [ECF No. 28 at 1; ECF No. 29 at 6].

"Jurisdiction is the cornerstone of every federal court action." Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021). Thus, "[w]hen faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995) (citations omitted); see also Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002) ("When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter."). However, "[w]here both federal jurisdiction and the existence of a federal claim turn upon whether the complaint states a federal question, the preferable practice is to assume that jurisdiction exists and proceed to determine whether the claim passes muster under Rule 12(b)(6)." Est. of Soler v. Rodriguez, 63 F.3d 45, 47 n.1 (1st Cir. 1995).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject-matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). The Court must "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to [the plaintiff's] cause." Royal v. Leading Edge Prods., 833 F.2d 1, 1 (1st Cir. 1987). "Dismissal can be justified only if it clearly appears that no colorable hook exists upon which subject matter jurisdiction can be hung." Id. Even so, "a plaintiff who seeks to bring her suit in a federal forum bears the burden of establishing that the federal court has subject-matter jurisdiction." Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64 (1st Cir. 2018).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must similarly "accept the complaint's well-pleaded facts as true and 'draw all reasonable inferences therefrom in the pleader's favor.'" Keach v. Wheeling & Lake Erie Ry. Co. (In re Montreal, Me. & Atl. Ry., Ltd.), 888 F.3d 1, 6 (1st Cir. 2018) (citation omitted). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

### III.     DISCUSSION

J'Adore's Amended Complaint invokes this Court's federal-question jurisdiction to hear "civil actions arising under the Constitution, laws, or treaties of the United States," 18 U.S.C. § 1331, and asks this Court to exercise supplemental jurisdiction over its state-law claims, see id.

§ 1367(a). [Am. Compl. ¶ 5]. J'Adore also invokes this Court's diversity jurisdiction over "civil actions where the matter in controversy exceeds . . . $75,000, . . . and is between . . . citizens of different States," 18 U.S.C. § 1332. [Am. Compl. ¶ 4].

Here, the Court has federal-question jurisdiction, but J'Adore fails to state a federal claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That provision "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014).[1] To have a right to sue under 15 U.S.C. § 1125(a), a plaintiff must demonstrate (1) an interest falling within the zone of interests protected by the Act, and (2) an injury proximately caused by a violation of the Act. Id. at 132.[2] "[T]o come within the zone of interests . . . under § 1125(a), a plaintiff

---

[1] 15 U.S.C. § 1125(a)(1) provides:
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

J'Adore labels its claim "TRADEMARK INFRINGEMENT," [ECF No. 25 at 14], so the Court assumes that it seeks to proceed under § 1125(a)(1)(A). See Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc., 828 F. Supp. 2d 384, 390 (D. Mass. 2010) ("15 U.S.C § 1125(a) . . . creates a cause of action for infringement of unregistered marks.").

[2] To be clear, the issue of whether J'Adore has a cause of action under the statute (sometimes called "statutory standing") is distinct from Article III standing, which implicates subject-matter jurisdiction. See Lexmark, 572 U.S. at 128 n.4.

must allege an injury to a commercial interest in reputation or sales." Id. at 131–32.[3] "[A] business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis." Id. at 132; see also Lewis v. Acuity Real Est. Servs., LLC, 63 F.4th 1114, 1118 (6th Cir. 2023) (noting that, under Lexmark, § 1125(a) does not extend to "[d]istributors of [a] business's product" who "might argue that its false advertising harmed their reputations because they became associated with a lemon product"); The Knit With v. Knitting Fever, Inc., 625 F. App'x 27, 41 (3d Cir. 2015) ("[I]t seems apparent that TKW, a yarn retailer who alleges to have been misled by its supplier into purchasing mislabeled yarn, is not within the zone of interests protected by the Lanham Act.").

    J'Adore cannot bring an action under 15 U.S.C. § 1125(a) because it has not sufficiently pled an injury to its "reputation and sales," as opposed to mere consumer injury resulting from "purchasing an inferior product." Lexmark, 572 U.S. at 132; see also Kam IV, Inc., 2017 WL 3083166, at *1 (dismissing Lanham Act unfair-competition claim because "the complaint does not adequately allege that Plaintiff suffered a concrete injury to its commercial interests or reputation as a result of the alleged infringement"); Ahmed, 28 F. Supp. 3d at 91 (dismissing Lanham Act false-association claim where plaintiff "asserts the legal conclusion of injury, but

---

[3] Lexmark involved a false-advertising claim brought under § 1125(a)(1)(B), but courts have also applied Lexmark's test to false-association claims brought under § 1125(a)(1)(A). See, e.g., Kam IV, Inc. v. D'Onfro, No. 16-cv-12079, 2017 WL 3083166, at *1 (D. Mass. July 19, 2017) (applying Lexmark to "[u]nfair [c]ompetition" claim brought under § 1125(a)(1)(A)); Ahmed v. Hosting.com, 28 F. Supp. 3d 82, 90 (D. Mass. 2014) ("assum[ing] without deciding that Lexmark applies in false association claims"). But see Quentin J. Ullrich, Is This Video Real? The Principal Mischief of Deepfakes and How the Lanham Act Can Address It, 55 Colum. J.L. & Soc. Probs. 1, 31 (2021) (noting that "[c]ourts are split on whether Lexmark . . . applies to Section 43(a)(1)(A) false association claims"). Neither J'Adore nor Defendants challenge the application of Lexmark's test here, so the Court will assume it applies to J'Adore's false-association claim.

states no facts establishing either a commercial interest in the mark or a commercial injury caused by the alleged infringement"). J'Adore asserts that Defendants' "false and misleading representations . . . damage[ed] Plaintiff's reputation in the marketplace as a trusted source for authentic luxury goods, caus[ed] financial loss through refunds, diminished sales, and lost customer confidence, and undermin[ed] Plaintiff's business relationships with consumers who now associate Plaintiff with counterfeit goods." [Am. Compl. ¶ 64]; see also [id. ¶ 22]. J'Adore, however, cannot sue under the Lanham Act for being "misled by [Defendants] into purchasing an inferior product." Lexmark, 572 U.S. at 132. And J'Adore "states no facts" to back up its conclusory assertions that it suffered injury in terms of sales or reputation. Ahmed, 28 F. Supp. 3d at 91.[4] Accordingly, J'Adore has not established a right to sue under 15 U.S.C. § 1125(a).

Defendants argue that J'Adore's failure to state a Lanham Act claim means the Court lacks federal-question jurisdiction. See [ECF No. 29 at 5–8]. But that puts the cart before the horse. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (quoting Oneida India Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974)); see also Toddle Inn Franchising, LLC v. KPJ Assocs., LLC, 8 F.4th 56, 62 (1st Cir. 2021) ("[O]nly the most extreme

---

[4] Although J'Adore argues that Belmore LLC v. Bayer Consumer Care AG, 819 F.3d 697 (4th Cir. 2016), shows that it falls within the Lanham Act's "zone of interests," [ECF No. 32 at 7], Belmore is distinguishable. There, the plaintiff, the owner of a foreign trademark, alleged that the defendant, who owned the same mark in the United States, "convey[ed] to consumers a false association with [plaintiff's] product" and "also deceiv[ed] distributors and vendors," causing the plaintiff to "lose[] sales revenue." Belmore, 819 F.3d at 711. J'Adore's claim—brought by a reseller rather than a competitor—and the specificity of its allegations are a far cry from those in Belmore.

cases will flunk this substantiality test."). The distinction between a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) and dismissal for failure to state a claim under Rule 12(b)(6) matters. In this instance, if the Court dismisses J'Adore's federal claim under Rule 12(b)(1), it must also dismiss J'Adore's pendent state-law claims, absent an independent basis for subject-matter jurisdiction. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."). Conversely, if the Court dismisses J'Adore's federal claim under Rule 12(b)(6), it "retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367," over J'Adore's pendent state-law claims. Id.; see also Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996) ("In deciding whether or not to retain jurisdiction on such an occasion, the trial court must take into account concerns of comity, judicial economy, convenience, fairness, and the like.").

    Defendants move to dismiss J'Adore's Lanham Act claim under both Rule 12(b)(1) and Rule 12(b)(6), but they do not address whether that claim was "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co., 523 U.S. at 89 (citation omitted). Here, Lexmark does not squarely "foreclose[]" J'Adore from bringing a Lanham Act claim. Steel Co., 523 U.S. at 89 (citation omitted). Instead, J'Adore has merely failed adequately to allege commercial injury, which is a prerequisite for bringing a claim under 15 U.S.C. § 1125(a).[5] The Court thus finds that J'Adore's federal claim fails under Rule 12(b)(6), and therefore, in its discretion, declines to exercise supplemental jurisdiction over J'Adore's state-law claims under 28 U.S.C. § 1367(c).

---

[5] The parties' briefing is limited to the threshold issue of statutory standing and does not address the merits of J'Adore's Lanham Act claim, on which the Court expresses no view.

See Roche, 81 F.3d at 257 ("[D]ismissal may sometimes be appropriate if the federal-question claim is eliminated early in the proceedings.").

That leaves diversity jurisdiction. Defendants do not contest J'Adore's claim that the parties are diverse, see [ECF No. 2 (disclosure statement)]; [Am. Compl. ¶¶ 1–4],[6] but they do argue that J'Adore has failed to establish that the amount in controversy exceeds $75,000. [ECF No. 29 at 9–10]. Defendants are correct.

"The party invoking diversity jurisdiction bears the burden of establishing that the amount-in-controversy requirement is satisfied." Anderson v. Vagaro, Inc., 57 F.4th 11, 14 (1st Cir. 2023). "The critical time for determining the existence vel non of the amount in controversy is the inception of the suit, i.e., the time of filing." Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 45 (1st Cir. 2001); see also Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 38 n.8 (2025) (reaffirming time-of-filing rule with respect to amount in controversy). Ordinarily, "a plaintiff's general allegation that the dispute exceeds the jurisdictional minimum is sufficient," unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." Anderson, 57 F.4th at 15 (first quoting Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004); and then quoting Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). When challenged, however, the plaintiff

---

[6] J'Adore asserts that "there is diversity of citizenship between the Plaintiff and the Defendants," [Am. Compl. ¶ 4], but the Court cannot tell whether this is the case. For purposes of diversity jurisdiction, the citizenship of J'Adore, a limited liability corporation, is determined by the citizenship of all its members. Berkley Nat'l Ins. Co. v. Atl.-Newport Realty LLC, 93 F.4th 543, 549 (1st Cir. 2024). Neither J'Adore's Rule 7.1 statement nor the Amended Complaint identifies the members of J'Adore and their citizenship. Since the Court concludes that J'Adore fails to meet the amount-in-controversy requirement, it need not determine whether the parties are "completely diverse," as required by 18 U.S.C. § 1332, id. However, if J'Adore chooses to amend its complaint, it should address this deficiency and file an amended Rule 7.1 statement.

must "allege with 'sufficient particularity' facts that in some way support the contention that there is more than $75,000 at stake." Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 42 (1st Cir. 2012) (quoting Dep't of Recreation & Sports of P.R., 942 F.2d at 90). The plaintiff can do this by "amend[ing] the complaint or submit[ting] additional documentation, such as affidavits, medical reports, or interrogatories," but "merely reiterating general descriptions of damages is insufficient, particularly when a plaintiff is put on notice of the complaint's deficiencies by a FRCP 12(b)(1) motion to dismiss." Anderson, 57 F.4th at 15; see also id. at 16 (faulting plaintiff for "fail[ing] to provide any numeric substantiation or evaluation establishing that her claims exceeded $75,000"); Abdel-Aleem, 665 F.3d at 43 ("[W]e expect something more than bald statements and round numbers."); DeCastro v. Abrams, No. 22-cv-11421, 2023 WL 4472381, at *3 (D. Mass July, 11, 2023) (dismissing counterclaims where defendant "d[id] not provide any specific calculation or estimate of monetary damages resulting from DeCastro's conduct").

      Here, J'Adore's Amended Complaint, which follows a challenge by Defendants to the sufficiency of J'Adore's jurisdictional allegations, [ECF No. 20], fails to establish with "sufficient particularity" that the amount in controversy exceeds $75,000. Abdel-Aleem, 665 F.3d at 42. The Amended Complaint baldly alleges damages "in excess of $150,000" for each of its five state-law claims, but it fails to provide any detail to support this figure. See [Am. Compl. ¶¶ 30, 39, 48, 52, 57]. Moreover, J'Adore concedes that "[i]n or around October 2022," Defendants refunded J'Adore $36,225 "for approximately thirty (30) handbags that had been returned," [id. ¶ 17], and does not specify, even approximately, how many additional returns or refund requests it has received from customers since that time, referring vaguely to "hundreds" of transactions with Defendants, [id. ¶ 11], "numerous requests for refunds," [id. ¶ 19], and "a

11

significant amount of money" that is purportedly being withheld, [id. ¶ 22]. Under Anderson and Abdel-Aleem, these allegations are not enough.

J'Adore resists this conclusion, in part, by pointing to customers' continued "return requests" and J'Adore's anticipation of future returns. [ECF No. 32 at 8]. But such post-filing (and, frankly, speculative) developments are irrelevant to the analysis. Corrada Betances, 248 F.3d at 45. J'Adore emphasizes its "significant reputational harm," [ECF No. 32 at 9], but also "provide[s] no substantiation for or valuation of" this harm. Abdel-Aleem, 665 F.3d at 41–42 (rejecting as insufficient allegations that plaintiff had suffered harm "including but not limited to his reputation, his emotional tranquility, and privacy"); cf. Greenspan v. MasMarques, No. 23-cv-10134, 2024 WL 1258062, at *6 (D. Mass. Mar. 25, 2024) (finding sufficient a business founder's allegations of reputational and business injury that included allegations of a specific decline in funding available to his company). Because J'Adore has failed to establish that it satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332, this Court lacks diversity jurisdiction over J'Adore's state-law claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) is **GRANTED**. The Amended Complaint is **DISMISSED** without prejudice.

**SO ORDERED.**

July 7, 2025                                                    */s/ Allison D. Burroughs*
                                                                                       ALLISON D. BURROUGHS
                                                                                       U.S. DISTRICT JUDGE